**UNITED STATES, Plaintiff,**

v.

**Augustine PENTA, Defendant.**

**No. Crim.A. 01–19–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 4, 2001.

Rebecca Bellows, Assistant United States Attorney, United States Attorney Office, Alexandria, Virginia, for plaintiff.

John Zwerling, Alexandria, Virginia, for defendant.

## OPINION

LEE, District Judge.

THIS MATTER is before the Court on the Government's objections to the presentence report and the calculation of the Defendant's base offense level based on the pure weight of Ecstacy pills found in the Defendant's possession. The issue presented is whether the Court should calculate the pure weight, or total weight,[1] of an Ecstacy pill to determine the drug quantity and the ultimate offense level of the Defendant.

At the time of Defendant Augustine Eugene Penta's arrest, Ecstacy was the name commonly used for at least three different controlled substances listed under the United States Sentencing Guidelines: 3, 4–Methylenedioxyamphetamine ("MDA"), 3, 4– Methylenedioxymethamphetamine ("MDMA"), and 3, 4–Methylenedioxy–N–ethylamphetamine ("MDEA"). Penta pled guilty to possession with the intent to distribute 3,052 pills of MDMA. Historical information provided by the Government revealed that Penta distributed an additional 2,000 pills of Ecstacy. The exact substance of the 2,000 Ecstacy pills is unknown. Whether the Court treats the 2,000 pills as MDMA, MDA, or MDEA could result in a different offense level and a twelve to fourteen month disparity in Penta's sentence. In drug trafficking convictions, a defendant's offense level is based upon the amount of the controlled substance possessed by a defendant. Generally, the Sentencing Guidelines require a court to calculate the entire weight of a mixture containing a controlled substance in order to determine a defendant's attrib-

utable drug quantity. However, when the number of pills is known and the exact weight of the substance is unknown, the Sentencing Guidelines distinguish MDA, from the other forms of Ecstacy, and recommend a pure weight for each MDA pill when calculating a defendant's drug quantity.

Based upon a review of the Sentencing Guidelines and the submissions of the parties, this Court holds that Ecstacy, known to be MDMA, is calculated by utilizing the known total weight of the MDMA pills. However, the rule of lenity applies when pills are acknowledged to be Ecstacy, yet the exact form of Ecstacy is unknown. Under the rule of lenity, the Court calculates the unknown form of Ecstacy as MDA and utilizes the pure weight of the substance in order to determine the Defendant's base offense level.

### I. Background

On October 11, 2000, Trooper Steven Zewatsky of the Virginia State Police stopped Defendant Augustine Eugene Penta in a 2000 Nissan Sentra on Interstate 95 in Prince William County, Virginia. Tropper Zewatsky found a total of 3,052 pills of MDMA in the vehicle. The pills were blue in color and some had a Statue of Liberty stamp on them. The gross weight of the 3,052 MDMA pills was 759.8 grams and the pure weight of the pills was 305 grams.

In January 2001, the Government filed a one count Indictment against Penta charging him with Possession with the Intent to Distribute 3,4–Methylenedioxymethamphetamine ("MDMA"), in violation of 21 U.S.C. § 841(a)(1). On March 21, 2001,

---

**1.** Throughout this Opinion, the Court will make references to the "pure weight" and "total weight" of the Ecstacy pill. The Court's reference to pure weight refers to the exact weight of the pure Ecstacy substance contained within a pill. Any reference to total weight refers to the gross weight of a pill containing an Ecstacy substance. The total weight includes the pure Ecstacy controlled substance, any other substance mixed with the Ecstacy controlled substance and contained with the pill, and the pill itself.

Penta pled guilty to the offense as charged. The Court continued sentencing until June 8, 2001, pending completion of the presentence report and investigation.

During the presentence report investigation, the Government informed the probation officer that on two occasions in September 2000, Penta distributed 1,000 pills of Ecstasy to an individual named Elroy. The Government received this historical information from a confidential informant. The informant did not specify the form of Ecstasy and at the time of sentencing the exact form of the Ecstacy was unknown. The 2,000 pills distributed to the confidential informant were white in color and had an anchor stamp on them. The probation officer used Penta's previous distribution of the 2,000 pills as relevant conduct in calculating Penta's offense level. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(A) (1998) (hereinafter "USSG").[2]

In the presentence report, the probation officer utilized the pure weight of the 3,052 pills, at 305 grams of MDMA and utilized the drug equivalency table (for MDA) to estimate the pure weight of the 2,000 pills at 200 grams of MDMA. The presentence report calculated the pure weight of all the pills to be 505 grams of MDMA, which converted to 17,675 grams of marijuana, or 17.675 kilograms of marijuana.[3] Accordingly, the presentence report calculated Penta's base offense level to be 16 because he had the equivalent of at least 10 kilo-

grams but less than 20 kilograms of marijuana. *See id.* at § 2D1.1(c)(12).

On June 8, 2001, this Court held a hearing for Penta's sentencing. In determining the base offense level pursuant to section 2D1.1 of the Sentencing Guidelines, the presentence report reflects a drug quantity based on the pure weight of the MDMA, as opposed to the gross weight of the pills containing the MDMA. Penta concurred with the presentence report's calculations of drug quantity, contending that Application Note 11 of section 2D1.1 of the Sentencing Guidelines,. requires the drug quantity to be determined by the pure weight of the MDMA. The Government disputed the calculation arguing that the Sentencing Guidelines require the drug quantity attributable to a defendant to be determined by the weight of the mixture of the substance contained within the pills, not by the pure weight of the MDMA.

The Court continued the sentencing hearing until August 24, 2001 and required the parties to submit proposed finding of facts and conclusions of law with respect to Penta's sentencing and whether the Court should utilize the pure weight or total weight of Ecstacy in calculating a defendant's base offense level. During this time, the Court also sought guidance from the United States Sentencing Commission on this issue. The Sentencing Commission could not provide any insight on the discrepancy in Application Note 11.

---

**2.** Unless otherwise indicated, this Court utilized the Sentencing Guidelines effective November 1, 1998, which would be the Guidelines applicable to Penta's offense.

**3.** The probation officer converted the MDMA substance into marijuana because the drug quantity table used to determine a defendant's base offense level does not contain a direct base offense level for specific quantities of MDMA. *See* USSG § 2D1.1(c), drug quantity

table. The probation officer utilized the drug equivalency table in Application Note 10 to convert the MDMA to grams of marijuana. *See* USSG § 2D1.1(c), cmt. n. 10 (1998) (amended 2001). Once the MDMA was converted into a marijuana equivalency, the probation officer was able to utilize the drug quantity table to determine Penta's base offense level.

## II. Discussion

MDA, MDMA, and MDEA are all recognized forms of Ecstacy. Prior to May 2001, the unlawful possession of each of these substances carried different penalties. *See* USSG § 2D1.1, cmt. n. 10 (1998) (amended 2001). In particular, one gram of MDA was the equivalent of 50 grams of marijuana; one gram of MDMA was the equivalent of 35 grams of marijuana; and one gram of MDEA was the equivalent of 30 grams of marijuana.[4] *See id.* In determining how many grams of MDA, MDMA, or MDEA are at issue, the Guidelines require that the Court utilize the entire known weight of a mixture contained within a pill. *See id.* at § 2D1.1(c), cmt. n. A to drug quantity table. However, when the number of pills and not the exact weight of the MDA is known, the Sentencing Guidelines recommend a typical pure weight of 100 milligrams for each MDA unit when calculating a defendant's offense level. *See id.* at § 2D1.1, cmt. n. 11. Application Note 11 does not include the typical pure weight per unit for a MDMA or MDEA pill.

Section 2D1.1 of the Sentencing Guidelines sets the base offense level of a defendant charged with unlawful manufacturing, importing, exporting, or trafficking of a controlled substance. The higher the drug quantity possessed by the defendant the higher the defendant's offense level. *See id.* at § 2D1.1(c). A court should include the drug quantity associated with the conviction as well as the relevant conduct of a defendant, pursuant to section 1B1.3(a)(1)(A) of the Sentencing Guidelines, in the calculation of the drug quantities. *See id.* at § 1B1.3(a)(1)(A) (stating that "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" is relevant conduct to be used in calculating the defendant's base offense level); *see, e.g., United States v. Williams,* 880 F.2d 804, 805–6 (4th Cir.1989) (applying section 1B1.3 to conduct asserted in a conspiracy). After determining the base offense level, a court must adjust the offense level by considering a defendant's role in the offense, and any obstruction, in order to reach the defendant's adjusted offense level. *See* USSG § 1B1.1(c). A court must then deduct the applicable points for acceptance of responsibility in order to reach the defendant's offense level total. *See id.* at § 1B1.1(e). This offense level total and the defendant's criminal history category combine to produce the guideline range within which a court should sentence a defendant. *See id.* at § 1B1.1(g).

### A.

■ The entire weight of the 3,052 MDMA pills must be used in calculating Penta's base offense level. Note A to the Drug Quantity Table in section 2D1.1(c) provides:

> Unless otherwise specified, the weight of the controlled substance set forth in the table refers to the entire weight of

---

4. On May 1, 2001, the Sentencing Commission amended the Sentencing Guidelines to provide that one gram of MDA, MDMA, and MDEA would each equal 500 grams of marijuana. *See* U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 609 (Supp. Nov. 1, 2001) (acknowledging the Ecstacy Anti–Proliferation Act of 2000's directive for the Sentencing Commission "to increase the base offense level for Methylenedioxymethamphetamine (MDMA), 3,4–Methylenedioxyamphetamine (MDA), 3,4–Methylenedioxy–N–ethylamphetame (MDEA), Paramethoxymethamphetamine (PMA) and any other controlled substance that is marked as Ecstasy . . . .") The Commission also added Paramethoxymethamphetamine ("PMA") as a recognized form of Ecstacy and made one gram of PMA the equivalent of 500 grams of marijuana. *See id.*

any mixture or substance containing a detectable amount of a controlled substance. If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level.

*Id.* at § 2D1.1, cmt. n. A. This principle applies to all drugs listed in the drug equivalency table: unless otherwise specified the court must utilize the entire weight of a dosage to determine the weight of the substance. *See United States v. Bayerle,* 898 F.2d 28, 31–32 (4th Cir.1990). MDMA is not specified for measurement using any weight other than the gross weight of the mixture.[5] Under the drug equivalency table, one gram of MDMA equals 35 grams of marijuana. *See* USSG § 2D1.1, cmt. n. 10. It is undisputed that the gross weight of the 3,052 pills is 759.8 grams. Accordingly, the 3,052 pills possessed by Penta are the equivalent of 26,-593 grams, or 26.593 kilograms, of marijuana.[6]

### B.

█ The Court will not infer the actual weight of the 2,000 pills for use in determining the drug quantity of the pills. This Court makes a factual finding that the Government has not met its burden of proof by the preponderance of the evi-

dence that the 2,000 Ecstacy pills were MDMA. *See United States v. Ellis,* 975 F.2d 1061, 1067 (4th Cir.1992) (holding that for sentencing purposes when determining the quantity of drugs, it is only necessary for the Government to prove the quantities by a preponderance of the evidence). The Government encourages the Court to infer that because Penta possessed the 3,052 pills at the time of his arrest on October 11, 2000, that the 2,000 pills Penta possessed in previous drug transactions were also MDMA. The confidential informant revealed the substance to be Ecstasy. However, Ecstasy has at least three recognized forms at the time of Penta's offense. It is unclear whether the 2,000 pills Penta possessed were MDA, MDMA, or MDEA. The informant described the pills as having an anchor on them and being white in color. These pills are different than the 3,052 pills confiscated from Penta's vehicle, which were blue in color and had a Statue of Liberty stamp embossed on the pill. This Court finds that the Government has not shown by a preponderance of the evidence that the 2,000 pills were in fact MDMA, and not some other form of Ecstacy.

█ Under the rule of lenity, this Court treats the 2,000 pills as if they were MDA. Historical information reveals that Penta transacted 2,000 pills of Ecstacy. The exact form and weight of the pure substance

---

**5.** This Court declines to accept Penta's argument and utilize the pure weight of the MDMA. Penta argues that the Court should treat MDMA and MDA as similar drugs because they are both forms of Ecstacy. According to Penta, the Court should look to section 2D1.1 Application Note 11, which recommends a typical pure weight calculation of MDA in determining the total weight of the controlled substance. *See* USSG § 2D1.1, cmt. n. 11. However, MDMA is distinct from MDA because the 1998 Sentencing Guidelines distinguished between MDA, MDMA, and other forms of Ecstacy in its drug equivalency table. *See id.* at § 2D1.1, cmt. n. 10. More-

over, Application Note 11 is only applicable when more reliable forms of calculation for pill weight are unavailable. *See id.* at § 2D1.1, cmt. n. 11. The Court knows the actual weight of the 3,052 MDMA pills; therefore, the Court utilizes the 759.8 grams as the actual weight for the 3,052 pills.

**6.** The Court reached this calculation by multiplying the 759.8 grams of MDMA by 35 grams, which is the conversion equivalency of marijuana, for a total of 26,593 grams of marijuana.

contained within the pills are unknown. In such a situation, the Sentencing Guidelines treat the various forms of Ecstasy differently. Application Note 11 of section 2D1.1 provides:

> If the number of doses, pills, or capsules but not the weight of the controlled substance is known, multiply the number of doses, pills, or capsules by the typical weight per dose in the table below to estimate the total weight of the controlled substance ... The Typical Weight Per Unit Table prepared from information provided by the Drug Enforcement Administration, displays the typical weight per dose, pill, or capsule for certain controlled substances. Do not use this table if any more reliable estimate of the total weight is available from case-specific information.

USSG § 2D1.1, cmt. n. 11. The Typical Weight Per Unit Table lists the typical weight per unit of MDA at 100 milligrams and acknowledges that the 100 milligrams is the estimated pure weight of the substance. *See id.* A court must multiply this estimated pure weight by the number of pills in order to assess the total drug weight attributable to a defendant. Application Note 11 expressly applies to MDA and not MDMA because the table does not contain a typical pure weight for MDMA pills. *See also United States v. Gowdy,* 232 F.3d 891, 2000 WL 1532900, *1 (4th Cir.2000) (unpublished) (stating that Application Note 11 does not pertain to MDMA). Ultimately, this distinction by Application Note 11 creates a disparity in the treatment and punishment of a defendant based upon what form of Ecstacy a defendant transacts. If a defendant transacts MDA, and the exact weight of the substance is unknown, the Court would

calculate the number of the pills by the estimated MDA pure weight of 100 milligrams. In such a case, 1,000 pills would be the equivalent of 100 grams of MDA. However, if the 1,000 pills were MDMA, and the exact weight was unknown, it would be unclear how to calculate the weight of the substance because Application Note 11 does not have a typical dosage weight for MDMA.

■ The Sentencing Guidelines are ambiguous as to the typical weight to utilize for MDMA when the actual weight of the MDMA is unknown. In cases of ambiguity, the Court must apply the rule of lenity to the interpretation of the Sentencing Guidelines. *See United States v. Blackburn,* 940 F.2d 107, 109 (4th Cir.1991). In accordance with the rule of lenity, the Court applies the Sentencing Guideline that results in the least offense level calculation. In Penta's case, the Court knows the 2,000 pills are Ecstacy; however, it is unclear whether the pills are MDA or MDMA. If the Court treats the 2,000 pills as MDA, the Court would calculate the number of the pills by the estimated pure weight of 100 milligrams. In such case, the 2,000 pills would be the equivalent of 200 grams of MDA. On the other hand, if the Court treats the pills as MDMA, the Court would have to utilize the actual weight of the pills. In Penta's case the actual weight is unknown. The Court would have to infer the actual weight per pill to be 249 milligrams (759.8 grams / 3,052 pills) based on the subsequent 3,052 MDMA pills distributed by Penta. The weight of the 2,000 pills would be the equivalent of 498 grams of MDMA. Notwithstanding the increased conversion levels for MDA,[7] Penta would be charged

---

7. Under the conversion tables applicable to Penta, every one gram of MDA is equal to 50 grams of marijuana, and every one gram of MDMA is equal to 35 grams of marijuana. *See* USSG § 2D1.1, cmt. n. 10 drug equivalency table. Accordingly, 498 grams of

with trafficking an increased quantity of a controlled substance if this Court treated the 2,000 pills as MDMA as opposed to MDA. Therefore, the Court treats the 2,000 pills of Ecstacy as if they were MDA and utilizes the typical weight table in Application Note 11 for MDA. Accordingly, the 2,000 pills possessed by Penta are viewed as 200 grams of MDA, which is the equivalent of 10,000 grams, or 10 kilograms, of marijuana.

### III. Conclusion

For the purpose of calculating his base offense level, Penta had 759.8 grams of MDMA (26.593 kilograms of marijuana) and 200 grams of MDA (10 kilograms of marijuana) in his possession. This is the equivalent of 36.593 kilograms of marijuana. Section 2D1.1(c)(11) of the Sentencing Guidelines sets the offense level at 18 for drug quantities found for the equivalent of at least 20 kilograms of marijuana but less than 40 kilograms of marijuana. Therefore, Penta's base offense level is 18. The remainder of Penta's adjusted offense level is undisputed. Penta received a three point deduction in his adjusted offense level for accepting responsibility for his offense, which leaves him with an offense level total of 15. Penta has a criminal history category of two. Therefore, the Guideline range for Penta is between 21 and 27 months.

In accordance with the Sentencing Guidelines, this Court sentences Penta to 21 months in the Bureau of Prisons and two years of supervised release. While in the Bureau of Prisons, the Court recommends that Penta be considered for the boot camp shock incarceration and/or the 500 hour intensive drug program. While on supervised release, Penta must participate in substance abuse treatment and drug testing at the direction of the probation officer.

The Clerk is directed to forward a copy of this Opinion and the accompanying Judgment to counsel of record.

MDMA would be the equivalent of 17,430 grams of marijuana, and 200 grams of MDA would be the equivalent to 10,000 grams of marijuana. *See id.*